Morning. Jonathan Wood for the Appellants, which I'll refer to collectively as the Fishermen. May it please the Court, I'd like to reserve two minutes for rebuttal. This appeal can be resolved through a straightforward application of the Administrative Procedures Act. The APA provides that any final agency action can be challenged as exceeding an agency's statutory authority. The statute of limitations for such claims is six years from when the challenged agency action became final. That's the holding of this Court in Shiny Rock, for example. Here, the fishermen contend that a statute, Public Law 99625, requires a service to implement protections for Southern California's fishery and its fishermen and gives it no authority to terminate those protections. Well, the early rule clearly says we're going to terminate under the following conditions. Why didn't you challenge it then if there's no authority to terminate? We didn't have to challenge it then. The lesson from this Court's decision in Wynn River and the Center for Biological Diversity cases is that a prior agency action that might also be illegal for the same reason doesn't shield subsequent agency actions. Wynn River is really quite a different case. What happened in Wynn River that it was quite unforeseeable that this would ever be applied to the particular piece of property in question. Here, the piece of property in question, if I can say it that way, is never in question whatsoever. We know exactly what they're talking about, the geographical areas both for the management area and then for the smaller area in which the sea otters are placed. And the earlier rule specifically says we terminate if any of the following conditions apply. So what more do you need to know in order to make the challenge you're now seeking to bring? So once again, the answer to your question is no court has ever accepted the argument that if an earlier agency action is illegal for the same reasons, you can't challenge subsequent ones. Wynn River CBD and the Fifth Circuit and D.C. Circuit cases we've cited in our briefs say that you can as long as you have a valid APA challenge at later agency action. And what in the end are you trying to accomplish? Are you trying to save the ability of fishermen to do incidental take in the management area? Is that what you want? Yes. We want to restore the statutory requirements. Basically, what we're asking for is the invalidation of the 2012 rule. Right. Well, but as I read the statute, the statute contemplates setting up this experimental population right outside that little island. And it exempts fishermen from the ESA to the degree that there's incidental take of the experimental population. The experimental population is now gone, which means that because the experimental population is now gone, the exemption from the incidental take requirement, of course, is also gone because there are no sea otters as to which that would apply. So we're drifting into the merits a little bit, which isn't before this court. Well, we aren't. We aren't. What I'm trying to figure out is what shows up later in terms of your ability to bring the challenge you're seeking to bring that was not already apparent at the time of the earlier rulemaking? And the answer is it doesn't have to be anything. So in Center for Biological Diversity, the argument that your question suggests could have also been made. In CBD, the environmental group is relying on a precedent from a lower court holding that the earlier regulatory definition was illegal. It violated the ESA at the time it was enacted, and that's what the district court has held. Citing that as precedent, CBD came to this court and said that the agency has adopted a new regulation, which is an agency action that incorporates it and is illegal for the same reasons. That is exactly what's happening here. The 2012 rule is clearly an agency action, which terminates the mandatory protections in the statute. That violates it and is challengeable under the APA. I don't see the 2012 rule as doing anything other than was clearly contemplated in the 1987 rule. That's true, but it still violates the statute because, according to the complaint, the statute does not allow the service to do what it did in the 2012 rule. That is to say it does not allow termination of the program? Exactly, the termination of the mandatory protections. So the 1987 rule clearly contemplates, very clearly specifies the circumstances under which the program will be terminated. Yes. What more did you need to know at that time to bring the challenge you're now seeking to bring? So this challenge we absolutely couldn't have brought because, under the APA, you need to have an agency action to challenge, and this challenges the 2012 rule. And since it hadn't yet been finalized, it hadn't even been thought of, that agency action couldn't have been challenged. The theory it's true could have been used against a prior agency action, but that's when River and CBD says that that doesn't block subsequent challenges. Because? Because it wasn't foreseeable that they might terminate? No. CBD doesn't say that at all. It just simply says that because this is an agency action, the later regulation, it can be challenged under the APA. And the APA doesn't contain anything like the limitation that Your Honor's question is suggesting, that you have to attack the first agency action that's vulnerable on these grounds, or you can't challenge any of the later ones. But to get at the earlier question Your Honor was asking about, you know, what more did we need? At the time the 1987 regulation was enacted, it was entirely speculative whether the service would ever actually violate the statute by terminating protections. Meaning they said they were going to do it, and you say it's speculative whether they're going to do what they're going to do. No, they didn't say they were going to do it. They said that if any of these criteria are satisfied, and if we can't decide why the program might have failed, then we can go forward with doing this. But all of that was speculated. The plaintiff, if they were going to challenge that, would have come in and say, in fact, it is going to fail. The service isn't going to know why, and thus, someday down the road, they're going to violate the statute. Under the APA, you need — you can't bring the claim until the culmination of the process that violates the statute. Here, that's the 2012 rule, not the 87 regulation. And so, as I said, a key aspect of any APA challenge is to identify what is the agency action that's actually being challenged, and the complaint is absolutely clear on this. If I could direct the Court to the first paragraph of the complaint, which is in the excerpt of records at page 21 and 22, it expressly says that in December of last year, the service violated the statute by ending the management zone. That is an APA claim. They have identified an agency action and argued that it violates a statute or is contrary to law. That's all that's required, and there are no other limitations from the APA. No court — this Court nor any other court have ever accepted that there are additional challenges. Wind River and CBD can easily be reconciled with the statute by saying that in Wind River, the denial of a petition would be a subsequent agency action that could be challenged, and CBD was the regulation is an agency action subject to challenge. There is no limitation like if your theory would call an earlier one into doubt, you can't bring it. If that were true, Wind River is wrongly decided because a petition to rescind the old regulation would be on the exact same theory that would call the old regulation into doubt. CBD would be wrongly decided because the theory against the regulation would also mean that the earlier definition was illegally decided. So it's simply not true that any court has ever accepted that. Our argument here is completely consistent with this Court's decisions in Wind River and in CBD. And I would direct you to the Fifth Circuit's case. In Dunn v. McCampbell, the Fifth Circuit, like this one, follows Wind River. And in that case, the Fifth Circuit explained the reason why Wind River says you can challenge individual enforcement actions or petition denials is because those are agency actions subject to challenge under the APA. Let me go back to my notes real quick. So as I said, CBD clearly controls. There's no basis under the statute, the APA, to justify treating this challenge to this agency action differently from the agency action issued in CBD. The government's argument is clearly inconsistent with the rationale of Wind River and CBD and, therefore, must be rejected. And I think part of the confusion is because in Wind River and CBD, this Court used terminology that is similar to this Court's analysis for when characterizing claims as either facial or as applied. In CBD, the Court said that you can't bring a facial challenge to the old regulation. I think what it meant was something like a direct challenge, that you can't have an APA claim against that agency action. But you can bring a challenge to later applications of it, because that's a new agency action that's subject to challenge. It wasn't adopting the standard that this Court is, I'm sure, familiar with of distinguishing facial claims that say a regulation is invalid in all or essentially all of its applications and as applied claims that hinge on some unique aspect of the particular plaintiff or the case. That's clearly not what it was getting at, because if it was, CBD is wrongly decided. Their argument in CBD was that this new regulation is invalid because the definition because they alleged it incorporated the definition, the originally illegal definition, which was illegal in all applications. This being one of them, it must, too, be illegal. The same in Wind River. If they had filed a petition asking for the repeal of the regulation they couldn't directly challenge, that, too, would be a facial claim under this Court's facial versus as applied. But none of that, I mean, just the similarity of language doesn't mean that some sorts of agency actions, including the 2012 rule at issue here, become immune to judicial review because the theory supporting them would call earlier agency actions into doubt. And if there are no further questions, I would like to reserve the remainder of my time for rebuttal. Thank you. Thank you. Your Honor, Rachel Herron on behalf of the Federal Appellees. The Fisherman's Sole claim in this case should be viewed as a facial challenge to the 1987 rule establishing a terminable sea otter translocation program. And when the claim is viewed in that light, it was properly dismissed. I don't quite get it. Why should it be viewed like that? Your Honor, there... I mean, what if there's a party comes along that's aggrieved today that wasn't around in 1987? I'm sorry, what was that, Your Honor? What if you had a party that is alive today or exists today that wasn't around in 1987? It's a long time ago. Yes, Your Honor. They would be precluded from challenging the agency action? Your Honor, I think that in that case there is... that would be a closer case. And the reason that I'm hesitating here is because the reason that this should be viewed in the government's view as a challenge to the 1987 rule stems from the particular regulatory and statutory context here. And specifically the fact that the fishermen could have brought this claim in 1987 that they chose not to. That what they are essentially challenging now in substance is the 1987 rule. But if it's a challenge to the... if it really is what you say it is, which is a challenge to the 1987 rule, then the answer should be clear. If you really mean that, there are lots of rules that were adopted, lots of regulations that were adopted in the 40s, 50s, that might still be around. And people are just precluded from challenging them because... Are you taking the position that this is just like a regulation, you know, as if nothing happened in 2012? This is just a challenge to the 87 regulation, and what happened in 2012 is not agency action so that people who are born afterwards or come along afterwards or are grieved afterwards are just precluded by a 6-year statute? Is that really the government's position? No, Your Honor. The government does not contest that the 2012 rule was a final agency action, that the 2012 rule could have been challenged on various grounds. All that the government is arguing in this case is that these particular plaintiffs needed to bring this challenge at an earlier time because that challenge was available to them and because in substance... Why were they aggrieved at an earlier time so that they could have brought the claim? Your Honor, to answer that question, it's necessary to take a look at the broader statutory context in which the 1987 rule happened. So I hope you'll indulge me on that. And what's important there is that the law at issue here, Public Law 99-625, All Parties Agree, gave the service discretion as to whether it was going to enact a sea otter translocation program. No party has argued that the service was compelled to do so. And that's important because when the service decided that it was going to use its discretion, it did so with a condition, and that condition was particularly that the program would be subject to termination when expressed criteria were met. When the service enacted that particular kind of translocation program, they were doing something that was irreconcilable with the view of the statute that the fishermen advance. So the fishermen knew at that point that they could challenge and they had incentive at that point to challenge because the 1987 rule itself was introducing sea otters to a location that sea otters had not been in for decades, if not a century or more. And the fact of moving them there in the first place would arguably have impacted the fishermen enough to give them standing to sue at that point on whatever grounds they could have brought against the 1987 rule, this particular ground being one of the ones that was available to them. The term is aggrieved. You can't just challenge a regulation because you're affected by it. I mean, let's say a regulation gives you more rights. You know, government passes a regulation and it only benefits to you. Are you then in a position to challenge the regulation? Certainly, Your Honor. This is not that case. But it sort of is that case because as I understand it, the fishermen here said that's a great regulation. We love it. It was passed in 1987. They couldn't allege any harm. Well, Your Honor, we disagree that this was a regulation that in 1987 they said was great. Nevertheless, agree with me that they couldn't allege any harm. No, Your Honor, we disagree. Just for the purpose of the question, I just assume they couldn't allege any harm. Hypothetically, if they could not allege any harm in 1987. Then they could raise a challenge now? Let's say they're there, the regulation comes along, and accepting the premise of my question is they can't allege any harm. They don't want to allege any harm also because they don't have any harm, but they can't allege any harm because there is no harm. Can they now challenge the action taken in 2012? No, Your Honor. They could not challenge the action in 2012. They can't challenge it when they have no harm in 1987, and they can't challenge it in 2012 when they do have harm. When can they challenge it? The proper course in that circumstance would have been to do what they did in another case, which, as Your Honors know, the government sought to have consolidated this case. I don't care for the precedent. Just tell me what it is. Just get to it. Sure, they could have. Well, what should they have done? They could have, and in fact did file an administrative petition with the agency seeking a change in their rules and then go to court when they received a denial of that petition, which is what happened here, not in this particular case. I'm not understanding your answer. So the rule gets passed in 1987. That's correct. By hypothesis, given sort of my premise that they're not aggrieved at that time, they can't challenge that. So when do they take this other action that you're saying that they should have taken? They could have gone to the agency for an administrative petition at any time between then and now, at any time in which they became aggrieved. Well, I'm not sure I understand. Why can't they do that now? The government doesn't contest that they can go to the agency with an administrative petition seeking a change in the rule and that they would then, in fact, be able. And that's not barred by the six-year statute. They could have done that in 2011. They could have done it in 2010. They could have done it in 2012. In fact, they did do it in 2013. That is precisely what they did in 2015. I don't get it. How is that consistent with your position that what they're doing now is challenging the 87 rule? Isn't this exactly a challenge to the 87 rule, what you're saying? And you're saying that's not barred by the statute of limitations? Your Honor, this court's precedent in Wind River leaves that course of action open to a party. It's sort of a safety valve that's in place in a situation where the time, the statute of limitations, has otherwise elapsed. Why not have the simpler rule that says if you're not aggrieved when the original rule is adopted, but you are aggrieved when the rule is implemented in a way that, you know, the second action that implements the rule in a way that does aggrieve you, you can raise it then. Isn't that sort of a far simpler rule than saying you've got to petition, you've got to wait, you've got to wait long enough to claim this is a non-action by the agency, and then bring one of those really difficult to bring actions that says the agency should have acted. Why is that Rube Goldberg scheme any better than what they're doing here? I mean, they might lose. They probably will lose on the merits, but I don't know. Two answers to that, Your Honor. First is that— I always get suspicious when a lawyer says two answers. I don't have a good answer, but I'm going to give you two things that are 49% good. In this case, Your Honor, I'm just trying to give myself an opportunity to get to the second answer. So the first answer is that in the vast majority of cases, the government agrees that things should proceed by the simpler mechanism, that there can be a challenge to a later action that applies an older action, and that there can be a challenge by someone who was not aggrieved by the first action in response to that new application in the newer action. It is simply the case that there was not a new application in the 2012 rule in the sense that Wind River or CBD have found such new applications to exist. So this isn't— I just want to make sure I understand. You have said somewhere during this argument that 2012 was an agency action. Yes, Your Honor, it was. So I'm not understanding what you just said right before that, where you said, well, what happened here can't be challenged. Why can't it be challenged? It's an agency action. Isn't that the thing that the APA goes to? Yes, Your Honor. If they are in fact aggrieved by it, and in fact it's an agency action, what else do you need for an APA challenge? Your Honor, you don't generally need anything more for an APA challenge. The problem here is that the government is simply contending that their challenge is not properly viewed as a challenge to the 2012 rule because of the particularities of the statutory scheme, because of the fact that they could have brought this claim in 1987, and because of the fact that the only thing they are challenging now are things that were available to challenge them in 1987. Your Honor, I would also point out that the effects of treating this as a challenge to the 2012 rule, when in substance it is a challenge to the 1987 rule that could have been brought in 1987, is that it's essentially giving the plaintiffs the opportunity, if they were successful, to paint the agency into a corner because what they are doing and what their complaint seeks is in essence and in substance a rewrite of the 1987 rule that requires the service to keep in place parts of the 1987 rule that the fishermen like, while preventing them, the service, from continuing to implement parts of that rule that they don't like. Counsel, may I interject a question, please? Of course. I'd like to comment about what's troubling me about this case. If your position is they should have challenged the termination provisions within the 1987 rule, but at the same time we know that the 1987 rule, apart from those provisions, was favorable to the fishing interests because it gave them a pass for exception on any incidental take in that area. And I'm puzzled as to, given that the rule as a whole was favorable to them, at first as to whether they really could have brought a court action to challenge the termination provisions not yet invoked. And I'm wondering if it would make more sense, in terms of administrative law, to say they can challenge the actual termination as a final agency action because they're now aggrieved, but they may have a heavy burden if all they're doing is facially challenging what was said back in 1987. Your Honor, to address the first part of your question first, I don't think that it is fair to say that the 1987 rule as a whole was net favorable to the fishermen such that they were not aggrieved at that time. It is true that there are provisions of the 1987 rule that the fishermen like and that they are seeking to preserve the exemptions from incidental take liability in the management zone, being the chief one. However, the net effect of the 1987 rule was to move sea otters to a location that the administrative record at that point showed had been a productive commercial shellfish fishery, and that was going to be impacting the fishermen's ability to do any shellfishing in the translocation zone itself, so not the area where they got this exemption from the incidental take liability, but from the particular area that the otters were being moved. That act certainly aggrieved them, and we submit could have been the basis for a challenge to the rule on whatever grounds were available to them at that time. With regard to the second half of your question, Your Honor, the government would agree that to the extent a challenge to the 2012 rule alone is allowed to go forward, there should be a heavy burden on the plaintiffs if all they are alleging is simply the facial challenge to the 1987 rule. Okay, thank you very much. Let me pick up on something you said. You said it would have been open to them to bring a challenge on any basis that was available to them. Let's say they are aggrieved, either actually aggrieved or presumably aggrieved, presumptively aggrieved, and they look at the rule and they say, you know, for once the government did it right. We can't find any challenge here. There's no basis for us to challenge the 87 rule. All the APA challenges would be frivolous. So they don't challenge it. But then they say, boy, but they really blew it on the 2012 rule. We have all sorts of challenges. They didn't give notice. In that case, Your Honor, they would absolutely be able to bring those challenges to the 2012 rule. The problem here is that the very thing that the fishermen are challenging and, in fact, the only thing that the fishermen are challenging are the things that were clearly asserted in the 1987 rule itself. It's simply not the case here that they would have looked at the 1987 rule and said, we don't have any challenge to bring, because the 1987 rule is what sets up a terminable translocation program in the first place. And it is the assertion of any ability to terminate under any circumstances that the fishermen have challenged. The district court gave them an explicit opportunity after it dismissed the case against them to amend their complaint to clarify if they were not actually only challenging the ability to terminate on any grounds, if they had other grounds that may have come into being later than the 1987 rule, and they declined to do so. So you concede that if they were challenging it based on the exercise of discretion to terminate, that would not be precluded? Your Honor, the government absolutely agrees that to the extent they were challenging the service's determination in 2012 that the criteria for termination had been met, that challenge could absolutely go forward at this time. Okay. We have a little time left for rebuttal. Thank you, Your Honor. I'd like to begin by addressing the complaint. There's simply no way to characterize this complaint as a challenge to anything other than the 2012 rule. The 2012 rule is identified as the cause of the fishermen's injury. It's what eliminated the protections for them and their fishery. And what's the basis for your challenge to the 2012 rule? We argue that it exceeded the agency's statutory authority and violated the statute because it has no authority to do what it did in the 2012 rule, terminate the person. And does the argument you're making against the 2012 statute apply with equal force to the 1987 rule? Would it apply differently because that one didn't actually terminate the statute? But your argument is that under the statute, the agency can't set up an experimental program that is terminable. Is that right? It can set up the program. It can't actually terminate it. Now I want to make sure that we're on the same page because I think we are. I think your argument is that the agency did not have the authority under the statute to set up a terminable program. Is that right? No. Our complaint says that they didn't have authority to terminate the protections in the 2012 rule. That's the only thing we seek relief against. We seek nothing against it. But the argument as to why they can't terminate is because what? Because they can't? They don't have the legal right to terminate? Right. Under the statute, there's no authority to do so. In other words, the 1987 rule is wrong because the 87 rule sets out the ability to terminate. Parts of it. But it's important to point out that's exactly true. The same thing would be true if we filed the petition, which the government admits we can do and bring this exact same theory. So all of the policy arguments they've made that are inconsistent with the APA and this Court's precedent to try to say that this claim can't be brought would be equally true of the sorts of APA challenges they admit we can. The reason why we could challenge them is because we can. This is a tricky case in a sense because basically I have to say I'm sympathetic to allowing challenges to be brought later rather than forcing them to be brought earlier on pain of losing them. So I start out with the basic idea that the Wind River line of cases is a good line of cases and the line of cases that says too late, sorry about that, is undesirable, we'll say, at that line of cases. So I start out with a general proposition favorable to what you're doing here. But it seems to me that what's happened is that what you want to do here is keep the part of the rule that allows your fishermen in the management zone to do whatever they want with respect to any sea otters. And you could have challenged the terminability in 1987. You saw exactly what was going on there. You did have some, I think, you wouldn't have been thrown out of court for lack of standing if you challenged that earlier rule because there was a fishery that you were being locked out of, that is to say in the relocation zone. It seems to me, and maybe you want to lose on the merits instead of on the statute of limitations, but it seems to me that you're trying to have your cake and eat it, too. Well, so the merits obviously are not before this Court. But I disagree. I don't think we could have challenged the establishment of the translocation zone. The statute clearly allows them to do that. So that wasn't something that injured us. The statute allows that. The only thing that injures us, and I see that I'm getting close to my time, is the termination of the protections that apply outside of it within the management zone. That's what they contend is illegal. And that provision was only violated in the 2012 rule. They weren't harmed by the regulations indication that someday, perhaps, if certain circumstances were met, the agency might do this. They were only harmed once it did. And that, as the government has conceded, is an agency action and a final one. That means that it can be challenged on the grounds it exceeds the agency's statutory authority. And there is no case from any court to indicate they shouldn't be allowed to bring that claim. And as I was saying earlier, I understand. Counsel, I'd just like to clarify something. Is it your argument that if the United States were to be preserved and continue on for 1,000 years and if fishermen still were harvesting sea urchins, so they had an interest to not have restrictions from Mammal Protection Act in that area, that the agency would have to keep this program going with the protections you've got for 1,000 years? Could not terminate the program? So the theory, which, as I said before, the merits aren't before this court because of the procedural posture. But, yes, the statute is framed so that what would happen is they'd have to go back to Congress and say, we think you should amend the statute. And I can't say much more than that because we don't have a record in this case. And so we haven't gotten to that point. Okay, I understand. I wanted to clarify that. But I think the important thing to point out is that while I understand the policy concerns about, you know, you can have your cake and eat it, too, or you can have these cases go on forever, Congress chose to allow any final agency action to be challenged on these grounds. And the government admits that we could at least challenge one, the denial of optician, to get exactly the result we want here. Well, if we can do it that way, we have to be able to do it through this one because both are final agency actions subject to challenge under the APA. And with that, I'm out of time. Thank you. Okay. Thank you. Case resolved. You will stand to admit that we're adjourned.
judges: Kozinski, W. Fletcher, Gould